UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NICOLE OSLAVIC, | CASE NO. 4:25-CV-00039-BMB |
| Plaintiff, | JUDGE BRIDGET M. BRENNAN |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

INTRODUCTION

Plaintiff Nicole Oslavic challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB) and supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry dated Jan. 1, 2025). For the reasons below, I recommend the District Court **AFFIRM** the Commissioner's decision.

PROCEDURAL BACKGROUND

Ms. Oslavic applied for DIB on July 8, 2022 and for SSI on July 13, 2022. (Tr. 205, 212). For both applications, she alleged she became disabled on September 30, 2018 due to herniated discs, bone spurs, and degenerative disc disease. (Tr. 64, 74). After the claims were denied initially and on reconsideration, Ms. Oslavic requested a hearing before an administrative law judge. (Tr. 70, 80, 90, 98, 131). On November 28, 2023, Ms. Oslavic (represented by counsel) and a

1

vocational expert (VE) testified before the ALJ. (Tr. 30-63). On December 15, 2023, the ALJ determined Ms. Oslavic was not disabled. (Tr. 15-23). On November 26, 2024, the Appeals Council denied Ms. Oslavic's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3; *see also* 20 C.F.R. §§ 404.981, 416.1481). Ms. Oslavic timely filed this action on January 10, 2025. (ECF #1).

FACTUAL BACKGROUND

I.     **Personal and Vocational Evidence**

Ms. Oslavic was 33 years old on her alleged onset dates and 38 years old at the hearing. (*See* Tr. 64). She has an associate's degree in applied sciences and medical assisting. (Tr. 38). She has past relevant work experience as a retail cashier/stocker/storekeeper. (Tr. 55-56).

II.    **Relevant Medical Evidence**

On September 14, 2018, Ms. Oslavic was examined in advance of a dental procedure. (Tr. 377-80). There, she reported suffering back pain for the past 15 years that progressed from bulging discs to three herniated discs. (Tr. 377). She did not report taking any medications. (*Id.*). The examination found she had "full motion" of her cervical spine; "no tenderness to palpation, no pain, normal strength and tone, normal range of motion, [and] no crepitus" in her hips; and "no swelling or edema, no tenderness to palpation, no warmth, normal strength and tone and normal range of motion" for both knees. (Tr. 380). Ms. Oslavic repeated her complaints in another pre-procedure examination in October 2018. (Tr. 372-75). The physical examination yielded similar findings (*Compare* Tr. 375 *with* Tr. 380) with the main difference that in September 2018, Ms. Oslavic started taking 800 mg Ibuprofen to treat pain (Tr. 373).

On February 7, 2020, Ms. Oslavic complained of right knee pain when going up stairs that worsened depending on her activities and her knee had been grinding for the previous month or

2

two. (Tr. 367). An examination found tenderness with moderate effusion and palpable crepitus in her right knee. (Tr. 369). X-ray imaging of her right knee taken that day showed no fractures or dislocations, preserved joint spaces, and no joint effusion. (Tr. 402).

The next treatment records were in February 2022 when Ms. Oslavic had sinus issues. (*See* Tr. 358-63). She reported a medical history of back pain, obesity, osteoarthritis, and right medial knee pain, among other things. (Tr. 359). She denied back pain (Tr. 360) and a physical examination showed normal musculoskeletal findings for her extremities (Tr. 362).

In May 2022, Ms. Oslavic complained of chronic back pain as well as ankle, knee, and wrist pain, and reported a history of bone spurs and three herniated discs. (Tr. 341). She described her pain as moderate, intermittent, aching, chronic, and aggravated by activity. (*Id.*). She denied any limited range of motion. (Tr. 342). Ms. Oslavic was diagnosed with chronic bilateral low-back pain without sciatica, prepatellar bursitis in her right knee, acute left-ankle pain, and obesity. (Tr. 344). Her doctor provided exercises for her back, knee, and left ankle and told her to continue with her chiropractor. (*Id.*).

On June 16, 2022, Ms. Oslavic followed up with her doctor for back pain. (Tr. 333-38). Her pain continued in her hips, knees, and legs, rated at four out of ten. (Tr. 333, 335). An examination of her spine yielded normal findings of pain with range-of-motion testing and some muscle tenderness. (Tr. 337). A knee examination showed crepitus when the leg was bent or extended. (*Id.*). Ms. Oslavic was given exercises, continued on Ibuprofen, and referred to physical therapy. (Tr. 338).

Ms. Oslavic started physical therapy three times a week on June 23, 2022. (*See* Tr. 450). At her initial evaluation, she reported daily pain that worsened over the last few years, and discomfort

3

if she sits for too long. (Tr. 445). She also reported difficulty sleeping and walking, irritability, loss of motion, stiffness, weakness, and worse pain with activity. (*Id.*). She rated her pain at four or five of ten that is worse in the morning but eases to a two-to-three of ten. (*Id.*). Her pain ranges from a ten out of ten at worst and a two out of ten at best. (*Id.*). She reported difficulties carrying, pushing, bending at the waist, and lifting more than 20 pounds. (*Id.*). She also reported she cannot walk more than a quarter of a mile, cannot stand for more than 10 minutes, and cannot sit for more than one hour. (Tr. 446). She continued with physical therapy through at least September 2022. (*See* Tr. 445-502). In a review on September 7, 2022, Ms. Oslavic reported physical therapy helps to manage her symptoms for that day or until she does too much, she can walk comfortably for about 20-30 minutes but has increased pain after an hour, and she can lift 15 pounds comfortably. (Tr. 502).

Ms. Oslavic returned to her doctor in November 2022 for a five-month check-up with continuing complaints of pain in her back, legs, hips, and knees. (Tr. 524). An examination found pain, limited spinal motion, and tenderness to palpation in the right knee, but otherwise yielded normal findings. (Tr. 526). A CT scan was ordered but her insurance refused to pay for it. (Tr. 527, 541). Ms. Oslavic's left hip and lumbar spine were x-rayed on December 14, 2022. (Tr. 521). The radiologist found no fracture or dislocation in the left hip and the joint spaces were well maintained. (*Id.*). But Ms. Oslavic's spine showed "marked narrowing L5-S1 intervertebral discs" while the other intervertebral discs showed normal height. (*Id.*).

Ms. Oslavic returned to her doctor in April 2023 with similar complaints of lower-back pain. (Tr. 534). She could not have an MRI performed due to a piercing in her right ear and

4

concerns of an infection were the piercing removed. (Tr. 534). A second order for a CT scan was placed with instructions for Ms. Oslavic to follow up afterwards. (*Id.*).

Ms. Oslavic returned for a follow-up visit in July 2023 and reported visiting the orthopedist who diagnosed her with a meniscal tear in her right knee. (Tr. 538, 541). An examination found pain, limited spinal motion, and tenderness to palpation in the right knee, but otherwise yielded normal findings. (Tr. 540). Though her insurance company refused to cover a CT scan, it offered to cover an MRI. (Tr. 538). The MRI was ordered with instructions for Ms. Oslavic to follow up in three months. (Tr. 541).

The MRI of Ms. Oslavic's right knee was completed in August 2023. (Tr. 544-45). It showed the medial and lateral menisci were "within normal limits without evidence of a meniscal tear." (Tr. 544). Overall, the radiologist found "intact medial and lateral meniscus, cruciate ligaments, and collateral ligaments" with a "[t]iny joint effusion and Baker's cyst."[1] (*Id.*).

Ms. Oslavic discussed the test results with her doctor in September 2023. (Tr. 546, 548). An examination found pain, limited spinal motion, and tenderness to palpation in the right knee, but otherwise yielded normal findings. (Tr. 550). Ms. Oslavic was referred to pain management and an MRI of her lumbar spine was ordered to see if her insurance would cover it. (Tr. 552).

In October 2023, Ms. Oslavic returned to her doctor with complaints of neck and lower-back pain. (Tr. 553). An examination found "she does have pain with straight leg raise on the right negative on the left. She has pain with both flexion and extension. Very tender to palpation in the lumbar area." (Tr. 554). Because her back pain continued despite chiropractic care, Ms. Oslavic's

---

[1]     A Baker's cyst is a swelling of joint fluid collected behind the knee. *See Baker Cyst*, *MedlinePlus*, http://medlineplus.gov/ency/imagepages/19646.htm (last accessed Sept. 26, 2025).

doctor again ordered an MRI of her lumbar spine. (*Id.*). That month, X-ray imaging of her lumbar spine showed moderate disc-space narrowing and degenerative changes at the L5-S1 vertebrae. (Tr. 558). An MRI taken at the end of October showed the intervertebral discs were "preserved in height" though the L5-S1 vertebrae showed a mild disc bulge, mild left facet hypertrophy, and mild left foraminal narrowing. (Tr. 559). The radiologist found "mild lower lumbar spondylosis with a disc bulge and left facet hypertrophy" at the L5-S1 vertebrae "resulting in mild left foraminal narrowing." (*Id.*).

## III.   Relevant Opinion Evidence

On December 14, 2022, as part of her disability application, Ms. Oslavic was examined by Dr. Paul Schefft, M.D. (Tr. 511-15). Dr. Schefft determined Ms. Oslavic experienced lumbar strain, lumbar degenerative disc disease, right knee pain, and right hip pain. (Tr. 514). He also opined Ms. Oslavic was "at least moderately impaired" in her ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, stairs, grasping, squatting, carrying, and travelling. (Tr. 515).

On January 29, 2023, state agency medical consultant Abraham Mikalov, M.D., evaluated Ms. Oslavic as part of the initial evaluation of her disability application. (Tr. 68-69, 78-79). Dr. Mikalov opined Ms. Oslavic can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand, walk, or sit for about six hours of an eight-hour workday; can frequently climb ramps and stairs; can occasionally climb ladders, ropes or scaffolds; and can occasionally stoop, kneel, crouch, and crawl. (*Id.*). On April 11, 2023, state agency medical consultant Jose Ruiz, M.D., affirmed the findings on reconsideration. (Tr. 87-88, 96-97).

IV.     **Relevant Testimonial Evidence**

Ms. Oslavic explained working has become harder as her pain, particularly in her back, has progressively worsened over the past two decades. (*See* Tr. 43). She currently works nine hours a week as a home healthcare aide for her mother. (Tr. 39). She manages her mother's finances, takes her to doctor's appointments, and shops for her groceries. (Tr. 39-40). Before 2020, she worked as a cashier at various businesses, though she also stocked shelves. (Tr. 40-41).

Ms. Oslavic lives with her children and her infant grandson. (Tr. 36). Two of her children are adults and work while one is a teenager still finishing school. (*Id.*). She and her youngest child take care of Ms. Oslavic's infant grandson together. (*Id.*). Her family helps her with household chores and carrying groceries because Ms. Oslavic struggles climbing stairs. (Tr. 36-37). Ms. Oslavic drives for the family, though driving is painful after about 20 or 30 minutes. (*See* Tr. 37-38). She shops for the family's groceries with one of her children helping her carry grocery bags. (Tr. 38). She estimates she can walk about five-to-ten minutes without needing a break. (Tr. 47). Though walking causes her pain, she can support herself by holding onto the shopping cart. (Tr. 38). Ms. Oslavic can cook, bathe, and dress herself. (*Id.*).

Ms. Oslavic reported having tried every treatment for her pain, short of needles, though at the time of the hearing she was scheduling a knee injection. (Tr. 43, 46). Physical therapy did not relieve her pain beyond the day of her appointments and much of the relief came from the use of a TENS unit, a therapeutic electric stimulator. (Tr. 44). Ms. Oslavic treats her pain at home with her own TENS unit, a knee brace, ice and heat packs, and topical pain relievers. (*See* Tr. 44-46). Though she used to take Ibuprofen, she has developed gastritis from long-term use. (Tr. 45).

Ms. Oslavic also has osteoarthritis that causes pain in her hands and for them to either lock up or be unable to grip. (Tr. 49-50). She has daily pain in her hands and difficulty typing, writing, and holding a smartphone. (Tr. 50).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, which is "severe," defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his or her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to prove whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine whether the claimant

8

could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant deemed disabled. 20 C.F.R. §§ 405.1520(b)-(f), 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

At Step One, the ALJ determined though Ms. Oslavic had worked after September 20, 2018—the date she alleged she became disabled—the work did not constitute "substantial gainful activity." (Tr. 17). At Step Two, the ALJ identified "Lumbar degenerative disc disease/spondylosis/disc bulge/left facet hypertrophy with radiculopathy; Sacroiliitis; Greater trochanteric bursitis of both hips; Right knee meniscus tear and prepatellar bursitis of both knees; Osteoarthritis of multiple joints including bilateral hands; and Obesity" as severe impairments. (Tr. 17-18). At Step Three, the ALJ found Ms. Oslavic's impairments did not meet or medically equal the requirements of a listed impairment. (Tr. 18).

At Step Four, the ALJ determined Ms. Oslavic's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except she can never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can frequently handle and finger with the bilateral upper extremities. She can have occasional exposure to vibrations and extreme cold. The claimant must avoid all exposure to hazards, such as unprotected heights, dangerous moving mechanical parts, and commercial driving.

(Tr. 18). The ALJ then concluded Ms. Oslavic could perform her past relevant work as a retail cashier/stocker/storekeeper. (Tr. 21). Though the ALJ found Ms. Oslavic not disabled at Step Four, the ALJ proceeded to Step Five in the alternative and found Ms. Oslavic could also perform other work in the national economy, such as an office cleaner, marker, and bench assembler. (*See* Tr. 22). Thus, the ALJ concluded Ms. Oslavic was not disabled. (Tr. 23).

9

STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters,* 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.,* 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.,* 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.,* 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

10

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters,* 127 F.3d at 528. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## DISCUSSION

Ms. Oslavic argues remand is needed to correct a legal error from the ALJ's failure to make specific findings of fact as to her subjective statements about the severity of her pain as required by regulation. (*See* ECF #9 at PageID 598-603). Ms. Oslavic argues the ALJ "gave the boilerplate recitation that 'the intensity, persistence, and limiting effects of these symptoms' were 'not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.'" (*Id.* at PageID 600) (quoting Tr. 19). Then, the ALJ provided no actual explanation in the decision, merely reciting the medical evidence without discussing the relevant regulatory factors or explaining how the evidence supported the ALJ's conclusions. (*Id.* at PageID 602-03). Repeatedly, Ms. Oslavic emphasizes that her argument is the ALJ committed a legal error by not

following the applicable regulations, not that the decision lacks substantial evidence. (*Id.* at PageID 603; ECF #12 at PageID 621-22). The Commissioner responds that although the ALJ began with a boilerplate introduction, the ALJ nevertheless provided an adequate explanation by stating Ms. Oslavic's symptoms were not consistent with the other evidence in the record and then citing the physical examinations of Ms. Oslavic, imaging of her back and right knee, her treatment regimen, and the prior administrative medical findings. (*See* ECF #11 at PageID 614-15).

In evaluating the claimant's subjective reports of symptoms, Social Security Ruling (SSR) 16-3p provides that an ALJ must consider the claimant's complaints along with the objective medical evidence, treatment received, daily activities, and other evidence. 2017 WL 5180304, at *5-8 (Oct. 25, 2017). The ALJ also uses the factors outlined in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) to evaluate the claimant's statements:

1.  A claimant's daily activities;

2.  The location, duration, frequency, and intensity of pain or other symptoms;

3.  Factors that precipitate and aggravate the symptoms;

4.  The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5.  Treatment, other than medication, an individual receives or has received for relief from pain or other symptoms;

6.  Any measures other than treatment an individual uses or used to relieve pain or other symptoms; and

7.  Any other factor concerning an individual's functional limitations and restrictions due to pain and other symptoms.

The ALJ need not analyze all seven factors but should provide enough assessment to assure a reviewing court that the ALJ considered all relevant evidence. *Cross v. Comm'r of Soc. Sec.*,

373 F.Supp.2d 724, 733 (N.D. Ohio 2005). The articulation should not be conclusory; rather, it must be specific enough to permit the court to "trace the path" of the ALJ's reasoning. *Id.*

The ALJ analyzed Ms. Oslavic's subjective statements beginning with a common boilerplate introduction:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 19). The ALJ then spent several paragraphs reciting the findings from Ms. Oslavic's physical examinations between 2018 to 2023 and analyzing the opinion evidence. (Tr. 19-21). Then, the ALJ concluded:

> With respect to the claimant's alleged symptoms and limitations, I find such assertions only partially consistent with the evidence. She reported back, hand, knee, and foot pain at times during the relevant period. She had degeneration of her knees and back with positive straight leg raising and reduce[d] motion at times. Moreover, she was obese throughout the relevant period. However, she had relatively conservative treatment with medication and physical therapy. Moreover, the treatment notes documented generally intact sensation and reflexes with a normal gait. Accordingly, she could perform the reduced range of light work described in the residual functional capacity.

(Tr. 19-21) (citations omitted).

The ALJ's discussion followed SSR 16-3p and 20 C.F.R. §§ 404.1529 and 416.929. The ALJ provided two justifications for the determination that Ms. Oslavic's subjective statements of disabling pain were only partially consistent with the evidence: (i) she pursued "relatively

conservative treatment with medication and physical therapy" for that condition, and (ii) she

showed "generally intact sensation and reflexes with a normal gait" in her physical examinations.[2]

The first reason articulated by the ALJ is Ms. Oslavic's complaints of disabling pain are

inconsistent because "she had relatively conservative treatment with medication and physical

therapy." (Tr. 21). It bears repeating that Ms. Oslavic is arguing the ALJ did not follow the proper

legal standards, not that the decision lacks substantial evidence. (*See* ECF #9 at PageID 603;

ECF #12 at PageID 621-22). Thus, the issue is whether this reason is specific enough to permit the

court to "trace the path" of the ALJ's reasoning. *See Cross*, 373 F.Supp.2d at 733. Two of the

applicable regulatory factors are (i) the type, effectiveness, and side effects of the claimant's

---

[2]       The Commissioner also argues the ALJ also compared Ms. Oslavic's subjective statements to the prior administrative medical findings and that evidence is inconsistent with her complaints. (*See* ECF #11 at PageID 615-17). I agree the ALJ cited that evidence, which would be appropriate grounds to examine Ms. Oslavic's complaints. But the ALJ did not follow through and explain how Ms. Oslavic's complaints were inconsistent with that evidence.
        For instance, the ALJ found the prior administrative medical findings partially persuasive that Ms. Oslavic could perform light work but with occasional stooping, kneeling, crouching, and crawling, but that she also had manipulative limitations. (Tr. 21). But the ALJ did not explain how Ms. Oslavic's complaints were consistent or inconsistent with those findings. At most, the allegation analysis alludes to those findings by concluding "[a]ccordingly, she could perform the reduced range of light work described in the residual functional capacity." (*See* Tr. 21). Indeed, "light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," 20 C.F.R. §§ 404.1567(b), 416.967(b), which would be inconsistent with Ms. Oslavic's testimony that she "was unable to sit or stand for longer than 20 minutes at a time" and "could walk for only 5-10 minutes at a time." (Tr. 19).
        The ALJ never connected these proverbial dots. Though the court reads the decision as a whole and with common sense, it not the district court's role to infer what the ALJ *might* have been thinking or offer up explanations the ALJ *could* have articulated. *See Cox v. Comm'r of Soc. Sec.*, 615 F.App'x 254, 260-61 (6th Cir. 2015). It is the ALJ's role to explain his reasoning to a reviewing court. *See Hurst v. Sec'y of Health & Hum. Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) ("It is more than merely 'helpful' for the ALJ to articulate reasons for crediting or rejecting particular sources of evidence," (such as a claimant's testimony of disabling symptoms), "it is absolutely essential for meaningful appellate review.") (cleaned up). I thus limit my review only to the ALJ's rationale why Ms. Oslavic's complaints of disabling pain are inconsistent as explained in the decision.

medication and (ii) the claimant's non-medication treatment. *See* SSR 16-3p, 2017 WL 5180304, at *8; 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v). A conservative treatment approach for a condition can suggest that condition is not disabling. *Branon v. Comm'r of Soc. Sec.*, 539 F.App'x 675, 678 (6th Cir. 2013); *see also McKenzie v. Comm'r of Soc. Sec.*, 2000 WL 687680, at *4, 215 F.3d 1327 (table) (6th Cir. May 19, 2000) ("Plaintiff's complaints of disabling pain are undermined by his non-aggressive treatment.").

Here, while previously recounting the medical evidence, the ALJ noted Ms. Oslavic "attended physical therapy for back, hip, and knee pain" that "helped to manage her pain to some degree" and she "had joint and back pain for which she took Ibuprofen." (Tr. 20). Other treatment modalities for degenerative disc disease involving more than Ibuprofen and physical therapy have been determined to be "conservative." *See, e.g., Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *3 (6th Cir. Sept. 28, 2023) (characterizing "epidural injections, medial-branch blocks, and prescription pain medication" as "conservative treatment" for degenerative disc disease). While Ms. Oslavic argues she followed her physicians' treatment advice (ECF #9 at PageID 602), that supports the ALJ's analysis rather than detracts from it because it suggests Ms. Oslavic's physicians also thought her condition was not so bad as to require more aggressive treatment. Thus, the ALJ's application of the regulatory factors to conclude Ms. Oslavic's treatment was conservative and thus suggestive of a non-disabling—though limiting—condition is sufficiently clear.

The second reason the ALJ found Ms. Oslavic's complaints of disabling pain inconsistent was because she showed "generally intact sensation and reflexes with a normal gait" in her physical examinations. (Tr. 21). Again, because Ms. Oslavic argues only that the ALJ did not follow the

15

procedural regulations, the issue is whether this reason is specific enough to trace the path of the ALJ's reasoning. The applicable regulations also direct the ALJ to compare statements by the claimant to the objective medical evidence. *See* SSR 16-3p, 2017 WL 5180304, at *7 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Generally, a claimant's sensation, reflexes, and gait can indicate how a claimant's joint pain affects her mobility. *See, e.g.*, *Bittner v. Comm'r of Soc. Sec.*, No. 3:20-cv-2204, 2022 WL 1458298, at *22 (N.D. Ohio Jan. 18, 2022) (concluding normal physical examination findings, such as sensation and reflexes, suggested claimant's back and knee pain was not disabling); *Pitman v. Comm'r of Soc. Sec.*, No. 1:22-cv-711, 2023 WL 3510752, at *16 (N.D. Ohio Apr. 10, 2023) (same, with added finding of normal gait), *report and recommendation adopted*, 2023 WL 3496942 (N.D. Ohio May 17, 2023). From this, the court can trace the ALJ's reasoning that Ms. Oslavic's symptoms limited her mobility, but her physical examinations showed she could still walk and work, though at the light exertion level.

The two reasons the ALJ provided in the administrative decision do not support Ms. Oslavic's argument of failure to apply the proper legal standards. Admittedly, the ALJ seemingly failed to explain much of the cited evidence. Yet the two reasons the ALJ did provide included two regulatory factors and compared Ms. Oslavic's complaints to some of the objective medical evidence. I thus conclude remand is not warranted on this basis.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying supplemental security income.

Dated: September 26, 2025

16

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

OBJECTIONS, REVIEW, AND APPEAL

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-cv-186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).